IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-66

 No. COA20-311

 Filed 16 March 2021

 Rutherford County, Nos. 18 JA 101-02

 IN THE MATTER OF: R.P., X.P.

 Appeal by respondents from order entered 14 February 2020 by Judge Robert

 Martelle in Rutherford County District Court. Heard in the Court of Appeals 24

 February 2021.

 King Law Offices PLLC, by Brian W. King and Thomas Morris, for petitioner-
 appellee Rutherford County Department of Social Services.

 Miller and Audino LLP, by Jeffrey L. Miller, for respondent-appellant mother.

 Surratt Thompson & Ceberio PLLC, by Christopher M. Watford, for
 respondent-appellant father.

 Fox Rothschild LLP, by Kip D. Nelson, for Guardian ad Litem.

 TYSON, Judge.

¶1 Respondents mother and father appeal the adjudication and initial disposition

 order adjudicating their minor child, X.P. (“Xavier”) as abused and neglected. See

 N.C. R. App. P. 42(b) (pseudonyms are used to protect the identity of the juveniles).

 Respondent-father also appeals the trial court’s adjudication of R.P. (“Rorie”) as

 abused and neglected. We vacate the orders and remand for a new adjudication and
 IN RE R.P.

 2021-NCCOA-66

 Opinion of the Court

 disposition hearing.

 I. Background

¶2 Respondent-mother gave birth to Xavier, while in the bathtub at her parents’

 home in July 2018. Xavier and Respondent-mother tested positive for amphetamines

 and benzodiazepine after Xavier’s birth. Respondent-mother had failed to obtain

 prenatal care prior to the birth. The Rutherford County Department of Social

 Services (“DSS”) became involved with the family two days after Xavier’s birth.

¶3 DSS scheduled a child and family team (“CFT”) meeting and drug testing for

 Respondents, their twelve-year-old child, Rorie, and Xavier for 28 August 2018. Both

 Respondent-mother and Xavier tested positive for methamphetamine. Respondent-

 mother and Xavier attended the CFT meeting and agreed to a safety plan.

 Respondent-father failed to attend or to bring Rorie to be drug tested.

¶4 The safety plan included the family moving into the juveniles’ paternal

 grandfather’s home. On 13 September 2018, when DSS arrived at the grandfather’s

 home for the next scheduled CFT meeting, the family had moved back into their own

 home. Rorie told DSS she had observed both of her parents use methamphetamine

 in the home and she did not feel safe being around them. Rorie was tested the next

 day and was negative for drugs.

¶5 DSS filed its original juvenile petitions on 13 September 2018, alleging Rorie

 was neglected and Xavier was abused and neglected. DSS filed amended petitions
 IN RE R.P.

 2021-NCCOA-66

 Opinion of the Court

 with the same allegations on 16 October 2018. The juveniles were placed into DSS’

 custody. After initially being in foster care, Rorie was placed in the home of her

 paternal grandfather and Xavier resided in a kinship placement.

¶6 Respondents acquiesced to an out-of-home services agreement on 21

 September 2018. Both parents agreed to complete mental health and drug

 assessments and comply with any recommended treatment. Respondents denied

 drug usage and did not complete any drug assessments.

¶7 Respondent-mother tested positive for methamphetamine on 25 September

 2018 and again on 25 October 2018. Respondent-father provided his first drug screen

 on 25 October 2018, which was positive for methamphetamine and amphetamines.

 On 4 January 2019, Respondent-mother tested positive for oxycodone,

 methamphetamine, and amphetamines. Respondent-father tested positive for

 methamphetamine and amphetamines on that same date.

¶8 The adjudication hearing was held 22 January 2019. All parties and their

 attorneys were present before Judge C. Randy Pool. The parties stipulated to

 thirteen statements of fact. The stipulations were introduced as Exhibit A and DSS

 offered no other evidence at adjudication. The stipulations included the results of the

 drug tests administered through the pendency of the case, that Xavier was abused

 and neglected, and that Rorie was neglected.
 IN RE R.P.

 2021-NCCOA-66

 Opinion of the Court

¶9 Judge Pool indicated “based on the stipulations [he] would make findings of

 fact consistent with those in the stipulation on Exhibit A, would -- based on that

 stipulation -- enter the adjudications of neglect [of both juveniles] and abuse [of

 Xavier].”

¶ 10 At the disposition stage of the hearing, the court received DSS’ court reports

 and those of the guardian ad litem (“GAL”). The recommended permanent plan was

 reunification. Judge Pool listed several conditions to be included in the order and

 asked for DSS’ attorney to draft the order. The matter was to be set for review in

 three months.

¶ 11 The adjudication and disposition orders were not signed until 14 February

 2020. Judge Pool had resigned prior to that date, and the order was signed by the

 chief district court judge, Judge Robert Martelle. Respondents timely appealed.

 Respondent-mother noted her appeal only to the order regarding Xavier.

 II. Jurisdiction

¶ 12 Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7B-1001(a)(5)

 (2019).

 III. Standards of Review

¶ 13 This Court reviews a trial court’s adjudication of a child as a neglected or

 abused juvenile to determine “(1) whether the findings of fact are supported by clear

 and convincing evidence, and (2) whether the legal conclusions are supported by the
 IN RE R.P.

 2021-NCCOA-66

 Opinion of the Court

 findings of fact.” In re Gleisner, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000)

 (citations omitted). “The trial court’s conclusions of law are reviewable de novo on

 appeal.” In re K.J.D., 203 N.C. App. 653, 657, 692 S.E.2d 437, 441 (2010) (citation

 and quotation marks omitted).

¶ 14 “The standard of review of the dispositional stage is whether the trial court

 abused its discretion.” In re D.R.B., 182 N.C. App. 733, 735, 643 S.E.2d 77, 79 (2007).

 An abuse of discretion occurs when the trial court acts under a misapprehension of

 the law or its ruling is “so arbitrary that it could not have been the result of a reasoned

 decision.” White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

 IV. Issues

¶ 15 Respondents assert the adjudication and disposition orders signed by Judge

 Martelle are void, and argue in the alternative, that their stipulations are

 insufficient, standing alone, to support an adjudication of abuse or neglect.

 Respondents further assert the trial court erred in relying solely upon written reports

 and attorney arguments at the disposition stage.

 V. Analysis

 A. Ministerial Action

¶ 16 We take judicial notice that Judge Pool resigned from the bench and left the

 orders unsigned. See N.C. Gen. Stat. § 8C-1, Rule 201 (2019) (court may take judicial

 notice of fact not subject to reasonable dispute). North Carolina Rule of Civil
 IN RE R.P.

 2021-NCCOA-66

 Opinion of the Court

 Procedure 63 allows the chief district court judge to sign orders upon the resignation

 of a district court judge.

 If by reason of death, sickness or other disability,
 resignation, retirement, expiration of term, removal from
 office, or other reason, a judge before whom an action has
 been tried or a hearing has been held is unable to perform
 the duties to be performed by the court under these rules
 after a verdict is returned or a trial or hearing is otherwise
 concluded, then those duties, including entry of judgment,
 may be performed:

 ...

 (2) In actions in the district court, by the chief judge of the
 district, or if the chief judge is disabled, by any judge of the
 district court designated by the Director of the
 Administrative Office of the Courts.

 If the substituted judge is satisfied that he or she cannot
 perform those duties because the judge did not preside at
 the trial or hearing or for any other reason, the judge may,
 in the judge’s discretion, grant a new trial or hearing.

 N.C. Gen. Stat. § 1A-1, Rule 63 (2019) (emphasis supplied).

¶ 17 Respondents argue Rule 63 does not anticipate the chief district court judge’s

 signing an adjudication order after the judge who presided at the hearing and heard

 the evidence resigned without entry of the orders. Respondents rely upon this Court’s

 holding that the function of a substituted judge is “ministerial rather than judicial.”

 In re Whisnant, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984).

¶ 18 In Whisnant, Judge Tate had conducted a hearing on a motion to terminate

 the respondent’s parental rights on 20 October 1983. Id. at 440, 322 S.E.2d at 435.
 IN RE R.P.

 2021-NCCOA-66

 Opinion of the Court

 Judge Tate stated insufficient evidence supported neglect, but evidence existed to

 find nonpayment of support and “he believed the best interest of the child would be

 served by termination of parental rights.” Id. Judge Tate directed the GAL attorney

 to prepare the order. Id. The resulting adjudication and disposition orders listed

 Judge Crotty had heard the matter and they were signed by Judge Crotty on 28

 December 1983. Id. This Court held “Judge Crotty was without authority to sign the

 order terminating respondent’s parental rights and the order he signed [was] a

 nullity.” Id. at 441, 322 S.E.2d at 435.

¶ 19 Respondents, relying upon Whisnant, assert the judge presiding at the hearing

 is the only one who hears all the evidence, passes upon the credibility of the witnesses,

 and discerns the weight to be applied to the testimony and the inferences to be drawn

 therefrom to adjudicate the issues. Respondents also argue Judge Pool, not Judge

 Martelle, is the one who received their stipulation in open court on the day of the

 hearing.

¶ 20 DSS and the GAL argue Judge Pool presided over the hearing and articulated

 both his findings of fact and the basis of his decision, stating he “would make findings

 of fact consistent with those in the stipulation on Exhibit A.” Judge Pool indicated

 he “would - based on that stipulation - enter the adjudication of neglect and abuse . . .

 as is admitted to.” DSS and the GAL assert that because of the stipulation all that

 was left for Judge Martelle was to sign the order as a ministerial act.
 IN RE R.P.

 2021-NCCOA-66

 Opinion of the Court

¶ 21 Our Juvenile Code allows for stipulations by the parties to be received into

 evidence at adjudication. N.C. Gen. Stat. § 7B-807(a) (2019). The statute provides

 “[a] record of specific stipulated adjudicatory facts shall be made by either reducing

 the facts to a writing, signed by each party stipulating to them and submitted to the

 court; or by reading the facts into the record, followed by an oral statement of

 agreement from each party stipulating to them.” Id. The statute requires the trial

 court shall make and state the same findings “that the allegations in the petition

 have been proven by clear and convincing evidence” as is required where live

 testimony is presented. Id.

¶ 22 Here, the parties stipulated to the facts underlying the adjudication. This

 stipulation was written and signed by all parties. It is unquestioned that the parties

 were lawfully able to stipulate to the adjudicatory facts in this matter. Such

 stipulations of underlying facts could properly have been included as part of the final

 judgment.

¶ 23 However, nothing in the record or transcript shows Judge Pool ever made or

 rendered the final findings of fact and conclusions of law in the unfiled and unsigned

 orders. He merely stated he would enter the adjudication “as is admitted to.” Since

 the record on appeal shows only a stipulation without any adjudication of the facts

 and conclusions of law, or rendering of the order, any action by Judge Martelle to
 IN RE R.P.

 2021-NCCOA-66

 Opinion of the Court

 cause the later prepared and unsigned draft order to be entered was not solely a

 ministerial duty. In re Whisnant, 71 N.C. App. at 441, 322 S.E.2d at 435.

¶ 24 Further, the statutorily required disposition hearing requires the presiding

 judge consider competent evidence “necessary to determine the needs of the juvenile

 and the most appropriate disposition.” N.C. Gen. § 7B-901 (2019). Judge Martelle’s

 signing of the disposition orders cannot be considered simply a ministerial act.

¶ 25 At the 22 January 2019 hearing, Judge Pool stated he “would make findings

 consistent with the stipulations consistent with the reports presented by the

 guardian ad litem and by the department of social services.” The court stated,

 “reasonable efforts [had] been made by the agency” and that it would be “in the best

 interest of the children to remain in DSS custody.” The court ordered Respondents

 to comply with their out-of-home services agreements. These four findings are

 included in the written orders.

¶ 26 All other purported findings and conclusions included in the order signed by

 Judge Martelle are not reflected in any stipulations or oral statements of Judge Pool.

 The written disposition portion of the order went beyond the oral recitations of Judge

 Pool.

¶ 27 Rendering and entering judgment was more than a ministerial task. Judge

 Martelle was without authority to sign the adjudication and disposition orders and

 the orders are a “nullity.” In re Whisnant, 71 N.C. App. at 441, 322 S.E.2d at 435.
 IN RE R.P.

 2021-NCCOA-66

 Opinion of the Court

¶ 28 DSS asserts voiding Judge Martelle’s order would be an improper extension of

 our Supreme Court of North Carolina’s recent holding in In re C.M.C., 373 N.C. 24,

 28, 832 S.E.2d 681, 684 (2019). DSS argues the reasoning in C.M.C. is only applicable

 to termination of parental rights hearings and orders and not to the initial

 adjudication of the juveniles. DSS’ argument is unpersuasive and erroneous.

¶ 29 In C.M.C., our Supreme Court held a termination of parental rights order

 signed by a different judge than the judge who presided over the termination hearing

 was a nullity. Id. The Court specifically adopted the reasoning of this Court’s

 decisions in In re Whisnant, 71 N.C. App. at 442, 322 S.E.2d at 435 and In re Savage,

 163 N.C. App. 195, 198, 592 S.E.2d 610, 611 (2004). The Supreme Court concluded

 the appropriateness of nullifying the orders stems “from the fact that N.C.G.S. § 1A-

 1, Rule 52 requires a judge presiding over a non-jury trial to (1) make findings of fact,

 (2) state conclusions of law arising on the facts found, and (3) enter judgment

 accordingly.” In re C.M.C., 373 N.C. at 28, 832 S.E.2d at 684 (internal citation and

 quotation marks omitted). The Court further recognized the appropriateness of their

 result by noting N.C. Gen. Stat. § 1A-1, Rule 58 provides that “a judgment is entered

 when it is reduced to writing, signed by the judge, and filed with the clerk of court.”

 Id. (citation omitted).

¶ 30 Contrary to DSS’ assertion, our Supreme Court relied upon our rules of civil

 procedure, not upon some perceived distinction between the gravity of a hearing on a
 IN RE R.P.

 2021-NCCOA-66

 Opinion of the Court

 juvenile petition versus a hearing on a motion to terminate parental rights. See id.

 Here, Judge Pool did not recite, render, nor sign the order. His unsigned order is not

 a valid judgment from where Judge Pool presided over the adjudication hearing, and

 Judge Martelle’s ministerial signature thereon cannot cure the judgment. See In re

 C.M.C., 373 N.C. at 28, 832 S.E.2d at 684.

 B. Stipulated Conclusions of Law

¶ 31 Our conclusion to vacate is also supported by other precedent. “It is well

 established that stipulations as to questions of law are generally held invalid and

 ineffective, and not binding upon the courts, either trial or appellate.” In re R.L.G.,

 260 N.C. App. 70, 76, 816 S.E.2d 914, 919 (2018) (citation and internal quotation

 marks omitted).

¶ 32 In the present case, the parties’ stipulation includes “the Respondent parents

 stipulate and admit that [Xavier] is an abused and neglected juvenile” and that Rorie

 is “a neglected juvenile.” Chapter 7B and our case law clearly require the trial court’s

 legal conclusion that a child is abused or neglected be based upon DSS’ presentment

 and admission of clear and convincing evidence. N.C. Gen. Stat. § 7B-805 (2019).

¶ 33 Here, the parties did not agree to the trial court entering a “consent

 adjudication order” pursuant to N.C. Gen. Stat. § 7B-801(b1) (2019) (allowing consent

 order to be entered where all parties consent, the juveniles are represented by counsel

 and the court makes sufficient findings of fact).
 IN RE R.P.

 2021-NCCOA-66

 Opinion of the Court

¶ 34 DSS concedes Respondents’ stipulation that they believed their children to be

 neglected and abused is not binding on a court as a legal conclusion. See In re R.L.G.,

 260 N.C. App. at 76, 816 S.E.2d at 919.

¶ 35 The juvenile petition filed alleges Xavier was abused in that Respondents

 “inflicted or allowed to be inflicted on the juvenile a serious physical injury by other

 than accidental means.” See N.C. Gen. Stat. § 7B-101(1) (2019). The petition alleges

 Xavier was neglected in that the Respondents did “not provide proper care,

 supervision, or discipline” and “lives in an environment injurious to the juvenile’s

 welfare.” See N.C. Gen. Stat. § 7B-101(15) (2019). DSS’ petition alleged the same

 statutory prongs of neglect concerning Rorie.

¶ 36 According to the trial court’s finding of fact in In re R.L.G., the respondent had

 admitted the juvenile was neglected because she did not ensure that the juvenile

 attended school regularly. In re R.L.G., 260 N.C. App. at 76, 816 S.E.2d at 918. This

 Court recognized “the determination of whether a juvenile is neglected within the

 meaning of N.C. Gen. Stat. § 7B-101(15) is a conclusion of law.” Id. at 76, 816 S.E.2d

 at 918-19. Such “[d]etermination that a child is not receiving proper care,

 supervision, or discipline, requires the exercise of judgment by the trial court.” Id.

 This Court held the respondent’s admission that the juvenile was a neglected juvenile

 “was ineffective to support the trial court’s adjudication of neglect.” Id.
 IN RE R.P.

 2021-NCCOA-66

 Opinion of the Court

¶ 37 The formulation of this conclusion requires the hearing judge to consider the

 properly admitted evidence, determine the weight and burden on DSS, and reconcile

 the nexus, if any, between the stipulated facts, and to adjudicate whether the child is

 neglected or abused. “The trial court’s findings must consist of more than a recitation

 of the allegations contained in the juvenile petition. The trial court must, through

 processes of logical reasoning, based on the evidentiary facts before it, find the

 ultimate facts essential to support the conclusions of law.” In re K.P., 249 N.C. App.

 620, 624, 790 S.E.2d 744, 747 (2016) (alterations and internal quotation marks

 omitted) (citation omitted).

¶ 38 Judge Pool would have been unable to simply rest alone upon a stipulated

 conclusion. It is equally clear Judge Martelle cannot, in the name of a ministerial

 act, do what Judge Pool himself could not do. See id. Judge Martelle was not present

 at the hearing and on the basis of the order alone could not adjudicate Rorie and

 Xavier as neglected and abused as a conclusion of law, in a ministerial act.

¶ 39 DSS asserts there exists a distinction between accepting a stipulation as a

 legal conclusion at an initial adjudication and disposition hearing versus accepting

 one at a termination of parental rights hearing. DSS argues the trial court’s action

 requires us to apply a lower standard, since it does not involve termination of parental

 rights or a substantial deprivation of Respondents’ ability to see their children. DSS

 asserts another judge signing off on an order after conduct of this hearing on
 IN RE R.P.

 2021-NCCOA-66

 Opinion of the Court

 allegations of abuse and neglect and determining the appropriate initial disposition

 is a ministerial task.

¶ 40 This assertion is not supported by the statute or our case law. The case of In

 re R.L.G., an appeal of the initial adjudication hearing, was held upon DSS’ petition

 alleging the juvenile was neglected. The disposition order in that case ordered DSS

 to pursue the goal of reunification. In re R.L.G., 260 N.C. App. at 73, 816 S.E.2d at

 916.

¶ 41 In the case of In re L.G.I., 227 N.C. App. 512, 515, 742 S.E.2d 832, 835 (2013),

 the respondent had entered into a stipulation of certain facts during the adjudication

 phase of the hearing. On appeal, this Court reviewed whether the adjudication order

 was a valid consent adjudication order, and no additional evidence showing neglect

 needed to be presented beyond the parties’ agreed upon facts. The respondent

 asserted, and this Court agreed, that her stipulation did not convert the trial court’s

 order into a consent adjudication order. Id. at 515, 742 S.E.2d at 835.

¶ 42 This Court affirmed the trial court’s adjudication because additional medical

 record evidence in the record supported the respondent-mother’s prenatal drug

 exposure, even without respondent-mother’s stipulation. Id. at 516, 742 S.E.2d at

 835.

¶ 43 No other evidence beyond the parties’ stipulation was presented at the

 adjudication hearing. Judge Pool was required to make findings of fact, adjudicated
 IN RE R.P.

 2021-NCCOA-66

 Opinion of the Court

 and state conclusions of law arising on those facts, and enter judgment accordingly.

 The parties did not and could not have stipulated to the final conclusion in this

 matter.

¶ 44 Respondent-father also points out the written order also concludes Rorie “is

 adjudicated to be an abused and neglected juvenile.” “The allegations in a petition

 alleging that a juvenile is abused, neglected, or dependent shall be proved by clear

 and convincing evidence.” N.C. Gen. Stat. § 7B-805. The underlying petition only

 alleged neglect. The box alleging “abuse” on the petition was not checked. The parties

 stipulated Rorie is neglected “[a]s a result of the frequent use of illegal controlled

 substances.” No evidence was offered at the adjudication hearing and no findings of

 fact in the order support a conclusion that Rorie was abused.

¶ 45 We categorically reject DSS’ argument that Judge Martelle’s rendering of Rorie

 as abused in the absence of such allegation in the petition was within his discretion

 or is, at worst, nonprejudicial or harmless error. Presuming Judge Pool had signed

 the order, this conclusion is erroneous. No clear and convincing evidence supports a

 conclusion Rorie was abused and that portion of the adjudication is vacated. Id.; In

 re Gleisner, 141 N.C. App. at 480, 539 S.E.2d at 365; see also In re D.C., 183 N.C. App.

 344, 349, 644 S.E.2d 640, 643 (2007) (holding where DSS did not click the box or

 allege neglect in its petition, the trial court erred by entering an order adjudicating

 the juvenile to be a neglected juvenile”). That conclusion is vacated.
 IN RE R.P.

 2021-NCCOA-66

 Opinion of the Court

 C. Disposition

¶ 46 Respondents also argue the trial court abused its discretion in rendering its

 disposition without sufficient credible and competent evidence to support its findings.

 DSS and the GAL respond that the initial disposition hearings are informal and there

 is no requirement that the order be supported by live testimony, just competent

 evidence. Both DSS and the GAL presented court reports to Judge Pool at the

 disposition stage. Because we hold the adjudication orders signed by Judge Martelle

 are “a nullity.” It is unnecessary to reach the merits of these arguments. In re

 Whisnant, 71 N.C. App. at 441, 322 S.E.2d at 435.

 VI. Conclusion

¶ 47 Notwithstanding the parties entered into specific stipulation of facts that Rorie

 was neglected and that Xavier was abused and neglected, Judge Pool did not

 adjudicate the evidence, enter conclusions of law, and render an order. The chief

 district court judge could not properly sign the later written adjudication and

 disposition orders as merely a ministerial duty. The orders are vacated and the case

 is remanded for a new hearing. It is so ordered.

 VACATED AND REMANDED.

 Judges COLLINS and WOOD concur.